MATTER OF TORO

In Deportation Proceedings

A-20704042

*Decided by Board February 27, 1980*

(1) To be admissible in deportation proceedings, evidence must be probative and its use fundamentally fair so as to not deprive respondents of due process of law.

(2) The fact that given evidence resulted from a search and seizure in violation of fourth amendment rights will not of necessity result in a finding that use of the evidence is fundamentally unfair.

(3) The circumstances surrounding an arrest and interrogation may in some cases render evidence inadmissible under the due process clause of the fifth amendment.

(4) With or without a voluntariness issue, cases may arise where the manner of acquisition of evidence is so egregious that to rely on the evidence would offend fifth amendment fundamental fairness requirements.

(5) Where investigating officer apparently stopped and questioned the respondent in 1974 solely because she appeared to be of Hispanic descent, consideration of her resulting voluntary admissions was not fundamentally unfair where the officer was acting in accordance with a Service policy that was then held in good faith.

CHARGE:
Order: Act of 1952—Sec. 241(a)(1) [8 U.S.C. 1251(a)(1)]—Immigrant—no valid immigration document

ON BEHALF OF RESPONDENT:  Dennis M. Mukai, Esquire
Popkin & Shamir, Inc.
5670 Wilshire Blvd., Suite 1800
Los Angeles, California  90036

BY:  Milhollan, Chairman; Maniatis, Maguire, and Farb, Board Members. Dissenting Opinion: Appleman, Board Member

In a decision dated September 5, 1974, an immigration judge found the respondent deportable under section 241(a)(1) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(1), as an immigrant not in possession of a valid immigrant visa. A period of voluntary departure was granted to the respondent, in lieu of deportation. The respondent appealed from the finding of deportability. The appeal will be dismissed.

At the deportation hearing conducted in this case, the respondent denied the factual allegations and the charge in the Order to Show Cause, and refused to testify as to her deportability. She stated that she would not testify because her fourth amendment right against illegal searches and seizures had been violated. In order to establish the respondent's deportability, the Immigration and Naturalization Service then offered a Form I-213, "Record of Deportable Alien." This document was admitted into evidence over the objection of the respondent's counsel.

The Form I-213 contains admissions regarding the respondent's alienage and deportability. These admissions were made to a Service officer on August 9, 1974. The document indicates that the respondent had been apprehended at 8:00 a.m. on that same day, and that the report was made at 1:15 p.m. A Form I-214 was also admitted into evidence, and indicates that at 1:00 p.m., the respondent was given the "Miranda" warnings in Spanish, except insofar as the warnings indicated a right to court-appointed counsel. However, the respondent refused to sign the Form I-214. No other evidence of alienage or deportability was presented.

· Both at the hearing and on appeal, the respondent contends that the Form I-213 should have been suppressed because it was obtained as the result of an illegal stop and arrest. The respondent, through counsel, made an offer of proof to the effect that the immigration officers who arrested her lacked a reasonable suspicion of her alienage when they stopped her for questioning. It was alleged that the respondent was stopped just after she stepped off a bus in downtown Los Angeles, while she was wearing ordinary street clothes. It was then submitted that a Service automobile pulled up next to the respondent, an officer got out of the car, and asked the respondent for identification. There was no apparent reason for speaking to the respondent other than "her obvious Latin appearance." He proceeded to identify himself as a Service officer, and indicated that he did not know the respondent's name and was not looking for her specifically. He allegedly asked to see the respondent's purse, opened it, removed a Social Security card and pay stub, then put the respondent in his car. It was alleged that the officers then proceeded down the street, stopped and questioned two other women of Latin appearance, and also placed them in the car. The women were then taken to Immigration Service offices, where they were fingerprinted and again questioned, and where the information contained in the Form I-213 was obtained.

The respondent requested at the hearing that the immigration officer involved in this arrest be called as a witness in order to corroborate her version of events and to provide a foundation for the admission of the Form I-213. The immigration judge recessed the

hearing in order to ascertain whether the person who prepared the Form I-213 was available to testify that day. When it was discovered that the officer was not immediately available, the immigration judge denied the respondent's request for production of the officer and admitted the Form I-213.

The immigration judge found the presence of the arresting officer unnecessary as he concluded that the respondent had not established any illegality concerning her arrest. In his decision he stated:

The Form I-213 indicates that the method of location was Area Control. It is apparent to me that cruising along a main artery of downtown Los Angeles would be the appropriate way in which to spot possible illegal aliens and I see no reason to continue this matter because of the unavailability of the Service investigator.

The immigration judge concluded that section 287(a) of the Act authorized such encounters.

Subsequent to the immigration judge's decision in this case, the Supreme Court rendered its decision in *United States* v. *Brignoni-Ponce*, 422 U.S. 873 (1975). That case held that, except at the border or its functional equivalents, officers on roving patrols may stop vehicles only if they have specific, articulable facts, together with the rational inferences drawn from those facts, that reasonably warrant the suspicion that the vehicles contain aliens illegally in the United States. The Court stated:

Even if [the officers] saw enough to think that the occupants were of Mexican descent, this factor alone would justify neither a reasonable belief that they were aliens, nor a reasonable belief that the car concealed other aliens who were illegally in the country.

The Government had also contended in that case that "the public interest in enforcing conditions on legal alien entry justifie[d] stopping persons who may be aliens for questioning about their citizenship and status." *Brignoni-Ponce* at 883. The Court, however, concluded:

For the same reasons that the Fourth Amendment forbids stopping vehicles at random to inquire if they are carrying aliens who are illegally in the country, it also forbids stopping or detaining persons for questioning about their citizenship on less than a reasonable suspicion that they may be aliens.

*Brignoni-Ponce* at 884. Thus, it has now been held that persons may not be stopped and questioned on the street by immigration officers absent a reasonable suspicion that they are aliens. *See Lee* v. *INS*, 590 F.2d 497 (3 Cir. 1979); *Cordon de Ruano* v. *INS*, 554 F.2d 944, 946 (9 Cir. 1977); *Illinois Migrant Council* v. *Pilliod*, 548 F.2d 715 (7 Cir. 1977) (order entered upon hearing en banc), modifying, 540 F.2d 1062 (7 Cir. 1976); *Au Yi Lau* v. *INS*, 445 F.2d 217 (D.C. Cir. 1971), *cert. denied*, 404 U.S. 864 (1971). *But see Marquez* v. *Kiley*, 436 F. Supp. 100 (S.D.N.Y. 1977).

On the record before us, we cannot find that the arresting officers

had a reasonable suspicion that the respondent was an alien when she was first stopped. Absent contrary testimony, it would appear that the respondent was stopped solely because of her "Latin appearance." Accordingly, the present record reflects that the initial stop of the respondent was in violation of her fourth amendment rights.

Respondent, through counsel, submits that the evidence establishing her deportability, which was acquired as a result of her apparently unlawful initial stop, must accordingly be suppressed under the fourth amendment exclusionary rule.[1] We do not agree. .

To be admissible in deportation proceedings, evidence must be probative and its use fundamentally fair so as to not deprive respondents of due process of law as mandated by the fifth amendment. *See Trias-Hernandez v. INS*, 528 F.2d 366, 369 (9 Cir. 1975); *Martin-Mendoza v. INS*, 499 F.2d 918, 921 (9 Cir. 1974); *Marlowe v. INS*, 457 F.2d 1314, 1315 (9 Cir. 1972); *Navarrette-Navarette v. Landon*, 223 F.2d 234, 237 (9 Cir. 1955), *cert. denied*, 351 U.S. 911 (1956). We have concluded that evidence resulting from a search and seizure in violation of fourth amendment rights is not for that reason alone excludable from civil deportation proceedings. *See Matter of Sandoval*, Interim Decision 2725 (BIA 1979). Every fourth amendment violation will not of necessity result in a finding that the admission of resulting evidence is fundamentally unfair. The circumstances surrounding an arrest and interrogation, however, may in some cases render evidence inadmissible under the due process clause of the fifth amendment. *See, for example, Matter of Garcia*, Interim Decision 2778 (BIA 1980); *Navia-Duran v. INS*, 568 F.2d 803 (1 Cir. 1977); *Bong Youn Choy v. INS*, 279 F.2d 642 (9 Cir. 1960) (involving involuntary statements). Moreover, with or without a voluntariness issue, cases may arise in which the manner of seizing evidence is so egregious that to rely on it would offend the fifth amendment's due process requirement of fundamental fairness. *See, for example, Ex parte Jackson*, 263 F. 110 (D. Mont. 1920).

In the instant case, we assume that the arresting officers' conduct did not comport with fourth amendment requirements as clarified under present case law. The incident in question, however, occurred in 1974, before the Supreme Court's decision in *United States v. Brignoni-Ponce, supra*, and while the Government position (as argued before the Court in that case) was that immigration officers were vested with the

---

[1] No claim was advanced below, nor facts alleged on appeal, that the respondent's subsequent statement was involuntary or otherwise inadmissible. The respondent's counsel, at page 13 of his brief on appeal, states without elaboration that the respondent "was intimidated into revealing some information on the I-213." However, this allegation was never made at the hearing and, except for this brief statement, was not pursued on appeal. There is nothing in the record to indicate that the respondent was in any way coerced into making her statement on August 9, 1974.

authority under section 287(a) of the Act to make inquiries of the type involved here. Under these circumstances, where the investigating officers were acting in accordance with Service policy, where the Service position was apparently held in good faith and not rejected by the Supreme Court until nearly one year after the incident in question, and where there was no evidence offered or alleged that the respondent's admissions were either involuntary or otherwise affected by the circumstances of her arrest, we do not find that the admission into evidence of the Form I-213 was fundamentally unfair. We make this finding assuming all of the facts alleged in respondent's offer of proof to be true. The appeal will accordingly be dismissed.

The time for the respondent's original grant of voluntary departure has long since expired. In accordance with *Matter of Chouliaris*, 16 I&N Dec. 168 (BIA 1977), we will grant the respondent 30 days from the date of this order in which to voluntarily depart from the United States.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** The respondent shall be permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the District Director. In the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.

Irving A. Appleman, Member *DISSENTING*:

I respectfully dissent.

In the course of the hearing below, the respondent requested that the arresting officer be called as a witness in connection with the submission of a Form I-213 into evidence. The immigration judge denied this request and admitted the Form I-213. His findings of alienage and deportability were predicated in large measure on the information contained in this form.

As the majority notes, the decision below antedated *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975), which enunciated the rule of "reasonable suspicion of alienage." The immigration judge did not have the benefit of *Brignoni-Ponce* when he made his ruling with respect to the witness. The so-called evidence about the "arrest" in this case comes solely from an offer or proof made by counsel for the respondent. The legality of the arrest was not put in issue through testimony, or even, minimally, by appropriate affidavits, *see Matter of Geronimo*, 13 I&N Dec. 680, 682 (BIA 1971); *Matter of Tang*, 13 I&N Dec. 691 (BIA 1971); *Matter of Wong*, 13 I&N Dec. 820 (BIA 1971.[1]

Notwithstanding the obvious inadequacy of this record the majority

---

[1] Although the immigration judge approved the offer as made, and the Service did not object.

has found that the respondent was stopped solely because of her "Latin appearance." On the most tenuous of evidentiary bases it has found that there was a fourth amendment violation. Under the rule laid down in *Matter of Sandoval*, Interim Decision 2725 (BIA 1979), the illegality of the arrest would be irrelevant insofar as the admissibility of the I-213 was concerned. However, for whatever reason, the majority has not applied a different standard, namely, that even though the evidence would be admissible under *Matter of Sandoval*, nevertheless, before it can be used, there must be "fundamental fairness" in the manner in which it was obtained, so as not to offend fifth amendment due process requirements of a fair hearing in its use.

The majority is now attempting to hedge its position in *Matter of Sandoval*. Outside of the exclusionary rule, the relationship between the manner in which evidence was obtained, and the "fairness" of the hearing, would seem to be a very murky area indeed. In addition to inquiry, where justified, into the circumstances of an arrest, there must also be inquiry whether or not there is a breech of "fundamental fairness" in admitting the evidence. Complication is laid upon complication. As I expressed in my dissent in the *Matter of Sandoval*, I believe the exclusionary rule *is* applicable in these proceedings and that evidence which has been obtained in the violation of the fourth amendment is inadmissible per se. Nothing in the present decision convinces me to change this position. It is laudable that the majority recognizes the dangerous potential of *Matter of Sandoval* and seeks to dull its edge. It is also unnecessary, if the exclusionary rule is held applicable.

Since the decision of the immigration judge preceded *United States* v. *Brignoni-Ponce, supra*, this case should be remanded and reopened for consideration in the light of that holding. At the reopened hearing, for reasons analogous to those set forth in my separate opinion in *Sandoval*, the arresting officer should testify, the Form I-213 should be authenticated and a ruling made as to its admissibility, and the record should be developed appropriately.

In the light of all the foregoing, I would remand.

MATTER OF WADAS

In Exclusion Proceedings

A-24000645

*Decided by Board March 14, 1980*

(1) In exclusion proceedings, under 8 C.F.R. 236.2(b), the immigration judge has the authority to regulate the course of the hearing, and where a determination of venue is essential to such regulation, he may in certain situations hear a motion to change venue without infringing on the general parole jurisdiction of the District Director.

(2) Where an applicant for admission has been paroled into the United States by the District Director and has been granted permission to continue his journey outside the district, his motion to the immigration judge in exclusion proceedings to change venue is subject to considerations similar to those present in venue motions in deportation proceedings.

(3) Where the applicant for admission was paroled into the United States, allowed to journey outside New York, the district of the port of entry, where he had never resided, and where the possible excludable acts had occurred in, and possible witnesses were located in Massachusetts, an interpreter is required, and two previous hearings failed to resolve the applicant's excludability, it was appropriate for the immigration judge to hear a motion to change venue to Boston.

EXCLUDABLE:
Order: Act of 1952 — Section 212(a)(20) [8 U.S.C. 1182(a)(20)] — Immigrant — not in possession of a valid visa

ON BEHALF OF APPLICANT: Pro se

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

The Service has filed an interlocutory appeal from a decision of Immigration Judge John Ruggiero, granting a change in venue from New York to Boston. It is the Service's contention that the immigration judge lacks jurisdiction to change venue in exclusion proceedings. Although we do not normally hear appeals from interlocutory decisions, in this case we will make an exception because the issue to be considered is important, and unlikely to be resolved in a more satisfactory context. Cf. *Matter of Sacco,* 15 I&N Dec. 109 (BIA 1974); *Matter of Fong,* 14 I&N Dec. 670 (BIA 1974). The appeal will be dismissed.

At the exclusion hearing before the immigration judge on July 19,

1979, there was testimony presented by the applicant for admission to the effect that the designation of New York as the location of the exclusion hearing was inappropriate. The applicant had applied for admission at New York, had been paroled into the United States by the District Director, and had been granted permission to continue his journey outside the New York district of the Service. Based on the information adduced at the hearing, the immigration judge concluded that the exclusion hearing would more properly be heard in Boston, and he ordered the change in venue to that city.

The Service on appeal contends that the immigration judge has no jurisdiction to change the venue in exclusion proceedings where, as here, the applicant has been paroled into the United States and allowed to travel outside the district in which he made his application for admission. It cites section 212(d)(5) for the proposition that the Attorney General may parole aliens into the United States under such conditions as he may prescribe, and that parole is not an admission for purposes of the immigration laws. The Service also cites 8 C.F.R. 212.5(a) to show that the discretion granted to the Attorney General under section 212(d)(5) of the Act has been delegated to the District Director in charge of a port of entry. In addition, the Service relies on *Matter of Lepofsky*, 14 I&N Dec. 718 (BIA 1974), to establish its contention that only the District Director may parole aliens into the United States. *Lepofsky* involved a case where the immigration judge allowed two applicants for admission to withdraw their application for admission and granted them conditional "permission" to remain in the United States for one month. The Board held that this order was an infringement on the parole power of the District Director.

Finally, the Service cites *Conceiro v. Marks*, 360 F.Supp. 454 (S.D. N.Y. 1973) for the authority that the Board has consistently held that the District Director alone may parole aliens into the United States. *Conceiro* concerned a Cuban refugee refused parole by the District Director who brought habeas corpus proceedings in the District Court. It was noted by the court that the Board had adopted the position that the discretion to parole lay with the District Director.

The Service concedes that immigration judges in deportation proceedings do have the authority to decide changes in venue. *Matter of Seren*, Interim Decision 2474 (BIA 1976). It contends, though, that *Seren* is distinguishable on at least two grounds. The first is that the immigration judge in deportation proceedings has jurisdiction over questions involving procedural due process, and that venue is such a question. Secondly, it asserts that an alien in deportation proceedings has made an entry which places him within the normal Constitutional protections, while an applicant for admission who has been paroled into the United States "has no legal immigration status".

347

The last point that the Service makes is that even if the immigration judge had authority to change venue, the applicant had not established that this change was necessary.

After considering the points raised by the Service, we have concluded that change of venue in exclusion proceedings, where the applicant has been paroled in and allowed to travel outside the district where he applied for admission, is governed by considerations similar to those present in deportation proceedings. Although the situation may appear to the Service to present a conflict between the parole powers of the District Director, and the jurisdiction which vests in the immigration judge at the point where the exclusion hearing begins, we view the situation in some what different terms. In a deportation proceeding, the immigration judge has the jurisdiction to consider venue because "8 C.F.R. 242.8 grants the immigration judge the power to take such action as "may be appropriate to the disposition of the case". *Matter of Seren, supra*. We see no reason that the same considerations should not hold true in this exclusion proceeding. 8 C.F.R. 236.1, in discussing exclusion proceedings, states in almost identical words that:

"Subject to any specific limitation prescribed by the Act and this chapter, immigration judges shall also exercise the discretion and authority conferred upon the Attorney General by the Act as is appropriate and necessary for the disposition of such cases."

In addition, 8 C.F.R. 236.2 delineates the rights and procedures to be followed in exclusion proceedings in terms very similar to those in deportation proceedings. This indicates that the distinction that the Service wishes to draw between deportation and exclusion proceedings on procedural grounds is not well founded. It also shows that the asserted distinction between Constitutional rights in deportation proceedings as opposed to those accorded in exclusion proceedings, is in fact almost irrelevant. Whatever differences in treatment may be justified on Constitutional grounds, the regulations provide protections to the aliens which are quite similar.

In addition, as a matter of practical consideration, the immigration judge is in a good position to hear arguments on the issue of venue and determine whether or not a hearing could better be conducted in a different Service district. The exclusion hearing would provide a full opportunity for all sides of the matter to be heard, and the issue could be promptly resolved.

We do not find this procedure to infringe on the authority of the District Director to set the conditions for parole. Unlike *Lepofsky, supra*, where there was no express or implied authority for the immigration judge to find an alien excludable and then allow him to remain, a change in venue is a natural adjunct of the immigration

348

judge's authority to conduct exclusion hearings under 8 C.F.R. 236.1. Such jurisdiction does not affect the District Director's jurisdiction to set parole, or the conditions to be met by the parolee. It also does not affect the District Director's authority to detain an applicant for admission; nor does it in fringe on his authority to limit the applicant's enlargement on parole to the vicinity of the port of entry. Here, the applicant was paroled into the United States and allowed to travel outside the district of the port of entry. In such a case, where it appears with good reason that another venue should be designated after the hearing commences, the immigration judge has the authority to hear a motion to change venue, weigh the factors involved, and to make a new designation if he considers it necessary. This procedure will enable him to "regulate the course of the hearing" as provided in 8 C.F.R. 236.2(b).

In this case, the District Director designated New York as the place of the hearing, and he contends that a change in venue is not justified. The transcript shows that the applicant has never resided in New York. It also indicates that the excludable acts occurred in, and the possible witnesses are located in Massachusetts. In addition, the applicant requires an interpreter, and of which there have already been two, with no resolution of the charge of excludability. We agree in these circumstances that the immigration judge properly found that he had authority to consider the question of venue once the hearing had commenced, and that a change in venue was appropriate in the circumstances. The appeal is accordingly dismissed.

ORDER: The appeal is dismissed.