42 F.3d 1401
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Elizabeth QUINTANA, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70407.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1994.
Decided Nov. 30, 1994.
 
 Before: CANBY, LEAVY, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I.
 
 2
 Elizabeth Quintana, a native and citizen of the Philippines, petitions for review of the BIA's dismissal of her appeal from the deportability finding of the immigration judge ("IJ"). She argues that her admission of foreign birth and date of entry into the United States should have been suppressed as fruits of an egregious, illegal arrest. We deny the petition for review.
 
 II.
 
 3
 Quintana argues that the information in the Order to Show Cause ("OSC") and the admission of foreign birth she made at her deportation hearing should be suppressed under the exclusionary rule as evidence stemming from an illegal arrest made in egregious violation of the Fourth Amendment.
 
 
 4
 The exclusionary rule does not apply in deportation proceedings except in cases involving "egregious violations of the Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained." INS v. Lopez-Mendoza, 468 U.S. 1032, 1050-51 (1984) (citing to Rochin v. California, 342 U.S. 165 (1952) (forced stomach evacuation to retrieve suspected drugs)). The INS argues that the circumstances of Quintana's arrest were not egregious by the standards of Rochin.
 
 
 5
 We recently held, however, that race-based stops made "in bad faith" are "egregious" violations of the Fourth Amendment and are subject to the exclusionary rule under Lopez. Gonzalez-Rivera v. INS, 22 F.3d 1441, 1452 (9th Cir.1994). We explained:
 
 
 6
 [T]he Lopez-Mendoza Court's citation to Rochin was not meant to limit "egregious violations" to those of physical brutality. Instead, under Ninth Circuit law, all bad faith violations of an individual's fourth amendment rights are considered sufficiently egregious to require application of the exclusionary sanction in a civil proceeding.... [A] bad faith constitutional violation occurs when evidence is obtained by deliberate violations of the fourth amendment that a reasonable officer should have known is in violation of the Constitution.
 
 
 7
 Id. at 1449 (citation, quotations, and modifications omitted). A race-motivated arrest is not only unreasonable, but egregious, because a reasonable law enforcement officer should know that race-based stops are unconstitutional and contrary to INS policy and is presumed to make such arrests only in bad faith. Id. at 1449-50. As we noted in Gonzalez-Rivera, the BIA has itself adopted a reasonableness standard to determine whether an officer has engaged in a bad faith constitutional violation. Id. at 1449 (citing Matter of Toro, 17 I & N Dec. 340, 343 (BIA 1980)).
 
 
 8
 Quintana was arrested because of her Filipino appearance and her proximity to a legalization office which was the site of an INS sting, later found to be unlawful. Racial appearance and presence in an area frequented by illegal aliens are not enough to justify a stop by immigration officials. Nicacio v. INS, 797 F.2d 700, 703 (9th Cir.1986). We reject the BIA's conclusion that the arrest was based on reasonable suspicion because the arresting officer informed Quintana that she was suspected in connection with amnesty fraud. An arresting officer might say anything at the time of arrest to "demonstrate" reasonable suspicion. This will not moot the objective requirement that the arrest be properly motivated.
 
 III.
 
 9
 As the Supreme Court noted in Lopez-Mendoza, regardless of how the arrest is made, "deportation will still be possible when evidence not derived directly from the arrest is sufficient to support deportation.... [In proceedings such as this one], 'the sole matters necessary for the Government to establish are the respondent's identity and alienage--at which point the burden shifts to the respondent to prove the time, place and manner of entry.' " 468 U.S. at 1043, (quoting Matter of Sandoval, 17 I & N Dec. 70, 79 (BIA 1979)); see also 8 U.S.C. Sec. 1361.
 
 
 10
 Unlawful arrest is not a bar to subsequent prosecution. United States v. Crews, 445 U.S. 463, 472 (1980). The identity and person of the respondent are not suppressible as fruit of an unlawful arrest. Lopez-Mendoza, 468 U.S. at 1039. Once Quintana appeared in court, the INS required only proof of alienage in order to shift the burden of proof to her. Quintana supplied that proof by admitting to foreign birth. Given that her presence in court was not itself suppressible, and that her response to the INS' question concerning her place of birth was not coerced, but was made voluntarily, in the presence of her counsel, several months after her arrest, we hold that Quintana's admission of foreign birth may not be suppressed as fruit of her unlawful arrest.
 
 IV.
 
 11
 After the INS presented evidence of Quintana's alienage, Quintana called upon her Fifth Amendment privilege and remained silent. In a deportation hearing, adverse inferences may be drawn from respondent's silence, whether justified under the Fifth Amendment or not. Id. at 1043; see also Matter of Guevara, 1990 BIA Lexis 20, text at n. 4.[1] Because Quintana presented no evidence, she failed to carry the burden imposed by section 291 of demonstrating that she had entered the country legally. Veneracion v. INS, 791 F.2d 778, 780 (9th Cir.1986); see also Matter of Benitez, 19 I & N Dec. 173 (BIA 1984) (respondent who admitted to foreign birth, then refused to answer further questions, held deportable under section 241(a)(1)). The presumptions created by sections 214(b) and 291 of the Immigration and Naturalization Act ("Act") render Quintana deportable under 241(a)(1).[2] Veneracion, 791 F.2d at 280.
 
 
 12
 Quintana's silence following her admission of alienage, together with that evidence, provided the Service with the evidence necessary to prove her deportability. We therefore hold that the BIA's determination of Quintana's deportability is supported by substantial evidence on the record considered as a whole, and deny the petition for review.
 
 
 13
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 It is true that under Matter of Guevara, had Quintana refused to answer the INS's question about her birthplace, the INS might not have had sufficient evidence to prove alienage or, ultimately, deportability: "respondent's silence alone does not provide sufficient evidence, in the absence of any other evidence of record at all, to establish a prima facie case of alienage, sufficient to shift the burden of proof to the respondent under section 291 of the Act." 1990 BIA Lexis 20, text between notes 4 and 5
 
 
 [2]
 Section 214(b) of the Act, 8 U.S.C. Sec. 1184(b), provides that "[e]very alien shall be presumed to be an immigrant until he establishes ... that he is ... a nonimmigrant."
 Section 291, 8 U.S.C. Sec. 1361, provides that in deportation proceedings "against any person, the burden of proof shall be upon such person to show the time, place, and manner of his entry into the United States."
 Section 241(a)(1), 8 U.S.C. Sec. 1251(a)(1), provides that any alien shall be deported who "at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry."