**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 30, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MARGARITO ESCALERA LUEVANO,

     Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

     Respondent.

No. 10-9547

**Appeal from the Board of Immigration Appeals**

Christopher J. Pooley, Law Office of Chris Pooley, Avon, Colorado, for Petitioner.

Aimee J. Frederickson, Trial Attorney, (Tony West, Assistant Attorney General, and John
S. Hogan, Senior Litigation Counsel, with her on the briefs), Office of Immigration
Litigation, Civil Division, Washington, D.C., for Respondent.

Before **KELLY**, **SEYMOUR**, and **O'BRIEN**, Circuit Judges.

**O'BRIEN**, Circuit Judge.

Submitted on the Briefs[*]

---

[*] Oral argument would not materially assist the determination of this appeal. *See*
Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.

Margarito Escalera Luevano[1] applied for adjustment of status during his removal proceedings based on his eligibility for an immigrant visa. He also requested an indefinite continuance in anticipation of the receipt of a visa. The immigration judge (IJ) determined he was not then eligible for adjustment of status and denied the request for a continuance because the anticipated visa would not be available for several years. The Board of Immigration Appeals (BIA) affirmed. Escalera argues the IJ abused his discretion in denying the requested continuance. He also claims the removal proceedings against him should be terminated because his Fourth Amendment rights were violated so egregiously as to deny him due process.[2]

## BACKGROUND

Escalera entered the United States without inspection on March 1, 2001. His sister, a United States citizen, filed an I-130 visa petition for alien relative on his behalf in April of that year; it was later approved.[3] In September 2006, a van in which Escalera was riding with six other passengers was stopped by a park ranger at a sobriety

---

[1] He is referred to as Escalera in the appellate briefs.

[2] Escalera also contends the Attorney General abused his discretion by bringing removal proceedings against him. We lack jurisdiction to review this claim. *See* 8 U.S.C. § 1252(g) ("no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter").

[3] Approved visa petitions remain in processing until a visa is available. Because the number of visas that can be issued to siblings of United States citizens each year is limited by law, there is a backlog. The date on which the visa petition was filed becomes the beneficiary's "priority date" and visas are issued in order of priority date as they become available.

checkpoint in Yellowstone National Park. Based on admissions he made at the scene, Escalera and his companions were each cited for evading immigration inspection in violation of 8 U.S.C. § 1325(a)(2). According to the probable cause statement on the back of the citation, the van was stopped at the sobriety checkpoint and its occupants, who were "under suspicion of being illegal aliens," were interviewed by an Immigration and Customs Enforcement (ICE) agent. (R. at 45.) The statement does not indicate what caused the suspicion or whether the ICE agent was present at the sobriety checkpoint or was called to the scene at some point during the stop. It also does not indicate the length of the stop or the nature of the questioning. It does, however, indicate that all seven occupants of the van admitted to being in this country illegally.

Escalera was cited by the ranger and released. The ICE agent at the scene did not issue a Notice to Appear (NTA) or take him into custody.[4] However, Escalera contends the U.S. Attorney offered to drop the charges contained in the criminal citation if he turned himself in to ICE officials at the Denver, Colorado, field office. When he appeared at the field office, ICE personnel issued an NTA and commenced removal proceedings against him. In a hearing before an immigration judge on December 11, 2007, Escalera conceded removability, requested adjustment of status, and asked for a continuance to, *inter alia*, await eligibility for adjustment of status because of his pending visa petition. The IJ granted a continuance until September 2, 2008, so Escalera could request voluntary departure but specifically declined to grant a lengthy continuance based

_____

[4] Because of its limited resources, ICE generally does not prioritize removal of aliens without criminal records who have approved visa petitions.

on the outstanding visa petition because the possibility of such relief was too remote -- at the time of the hearing the Department of Homeland Security was processing petitions with a priority date up to August 22, 1994, almost seven years before Escalera's. At the September 2 hearing, the IJ granted another continuance so Escalera could apply for other forms of relief but again specifically refused to grant any continuance based on the outstanding visa petition.

On September 23, Escalera admitted to the facts underlying the charge of illegal entry but withdrew his concession of removability because he believed the section of the Immigration and Nationality Act permitting adjustment of status rendered him nonremovable. He did not request voluntary departure. The IJ denied his request for adjustment of status because no visa number was available and then ordered removal. Escalera appealed to the BIA. Relevant here, he claimed the IJ abused his discretion in refusing the continuance based on the pending visa petition and argued the stop leading to the issuance of the NTA was unconstitutional. The BIA affirmed the IJ's denial of the continuance and determined Escalera had not shown a violation of his constitutional rights.

## DISCUSSION

The BIA did not summarily affirm the IJ's decision but issued a reasoned decision addressing Escalera's arguments on appeal. We therefore review the BIA's decision as the final order of removal and will not address the IJ's decision except where the BIA has explicitly incorporated his reasoning. *See Diallo v. Gonzales*, 447 F.3d 1274, 1278-79 (10th Cir. 2006).

In reviewing a decision of the BIA, we consider any legal questions de novo, and we review the agency's findings of fact under the substantial evidence standard. Under that test, our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole.

*Id*. at 1279.

A.    Due Process

Escalera claims his interrogation at the sobriety checkpoint was the result of racial profiling because his ethnicity was the only reason to suspect he was in the country illegally. He therefore claims the detention and questioning violated his constitutional rights. He requests dismissal of the proceedings against him as fruit of the poisonous tree. "Under 8 U.S.C. § 1252(a)(2), we have jurisdiction to review constitutional challenges and questions of law raised in a petition for review from a BIA decision." *N-A-M v. Holder*, 587 F.3d 1052, 1055 (10th Cir. 2009), *cert. denied*, 131 S. Ct. 898 (2011). We review due process claims de novo. *Id.*

In *INS v. Lopez-Mendoza*, the Supreme Court decided the exclusionary rule does not apply in civil deportation proceedings. 468 U.S. 1032, 1050 (1984). "[E]vidence resulting from a search and seizure in violation of Fourth Amendment rights is not for that reason alone excludable from civil deportation proceedings." *In re Toro*, 17 I. & N. Dec. 340, 343 (BIA 1980). However, under BIA procedure, evidence will be excluded if the "circumstances surrounding a particular arrest and interrogation would render use of the evidence obtained thereby 'fundamentally unfair' and in violation of due process requirements of the Fifth Amendment." *Lopez-Mendoza*, 468 U.S. at 1051 n.5 (citing *Toro*, 17 I. & N. Dec. at 343). "One who raises the claim questioning the legality of the

- 5 -

evidence must come forward with proof establishing a prima facie case before the Service will be called on to assume the burden of justifying the manner in which it obtained the evidence." *In re Burgos*, 15 I. & N. Dec. 278, 279 (BIA 1975).

Escalera does not argue the stop itself, which occurred at 5:00 p.m., was illegal.[5] Instead, he claims officers illegally prolonged his detention because of his race after the purpose of the sobriety checkpoint had been served. He claims there is no evidence in the record establishing a reasonable suspicion which would permit the ICE agent to detain him in order to inquire about his immigration status. He points to the absence of any factual basis in the probable cause statement explaining why the van's occupants were "under suspicion of being illegal aliens." (R. at 45.) However, he offers no evidence to support his argument.

The BIA concluded the probable cause statement on the back of Escalera's evading inspection citation did not show the sort of egregious circumstances necessary to trigger due process concerns.[6] The statement simply says the van in which he was riding was stopped, contained seven passengers suspected of being illegal aliens, an ICE officer interviewed them, and they admitted to being in the country illegally.

---

[5] He implies the sobriety checkpoint was some sort of pretext and asks us to take judicial notice of "happy hour," which, according to Wikipedia, occurs between four and seven in the evening. We need not consider whether this is the type of fact of which judicial notice can be taken because, standing alone, it has no relevance whatsoever.

[6] Escalera also contends the IJ violated his due process rights by not allowing him to build a record with respect to his Fourth Amendment claim. He did not raise this issue before the BIA and, in any case, the "evidence" he complains should have been included in the record is attached to his brief on appeal and, if considered, would not remedy the fundamental flaws in his argument.

Escalera did not testify at the proceedings before the IJ other than to verify his name. The lone affidavit he submitted says only that he believed he was not free to leave after the van was stopped. It sets forth no information regarding the stop and presents no facts to show he was detained before he admitted to illegal entry, let alone that any detention was extended because of his race. His "offer of proof in support of his motion is a mixed legal and factual declaration by counsel, not based on counsel's personal knowledge and never corroborated personally by the respondent." *Matter of Ramirez-Sanchez*, 17 I. & N. Dec. 503, 505 (1980). Counsel's arguments are not evidence. *Id*.

In any case, Escalera does not request suppression of specific evidence. His brief is not a picture of clarity on this issue but he appears to want us to classify the proceedings themselves as fruit of the poisonous tree because he was coerced through the illegal stop and citation to turn himself in to the Denver field office. This is the exact relief requested in *Lopez-Mendoza* where "Lopez-Mendoza objected only to the fact that he had been summoned to a deportation hearing following an unlawful arrest; he entered no objection to the evidence offered against him." *Lopez-Mendoza*, 468 U.S. at 1040. The Supreme Court concluded a Fourth Amendment violation could not be used to deprive the immigration court of jurisdiction. *Id*. 468 U.S. at 1040; *see also United States v. Olivares-Rangel*, 458 F.3d 1104, 1110 (10th Cir. 2006) (discussing *Lopez-Mendoza* and concluding "[b]ased on the cases the Court cited, it appears that the majority was referencing the long-standing rule, known as the *Ker-Frisbie* doctrine, that illegal police activity affects only the admissibility of evidence; it does not affect the jurisdiction of the trial court or otherwise serve as a basis for dismissing the

- 7 -

prosecution"). The BIA did not err in concluding Escalera had not shown a due process

violation. Had he shown such a violation, he would be entitled to suppression of the

evidence, but we could not grant the relief he requests – dismissal of the proceedings.

B.    Motion for Continuance

> In *Yerkovich v. Ashcroft*, 381 F.3d 990, 995 (10th Cir.2004), we held that 8
> U.S.C. § 1252(a)(2)(B)(ii) bars review of the IJ's discretionary decision
> denying petitioner's motion for a continuance. *See also* 8 C.F.R. § 1003.29
> ("The Immigration Judge may grant a motion for continuance for good
> cause shown."). The Supreme Court, however, recently held that decisions
> made discretionary by regulation do not come within that statutory bar and
> are reviewable. *See Kucana v. Holder*, --- U.S. ---, 130 S. Ct. 827, 831, 175
> L.Ed.2d 694 (2010). Because an IJ's discretion to deny a request for a
> continuance arises from a regulation, 8 C.F.R. § 1003.29, we possess
> jurisdiction to consider the denial of [a] motion for continuance under
> *Kucana*.
>
> We review the decision to deny . . . a continuance for an abuse of
> discretion. Only if the decision was made without a rational explanation,
> inexplicably departed from established policies, or rested on an
> impermissible basis, will we grant the petition for review.

*Castillo-Torres v. Holder*, 394 Fed. Appx. 517, 522 (10th Cir. 2010) (unpublished)

(quotation and citation omitted).[7]

Under 8 U.S.C. § 1255(i), an alien with an outstanding I-130 visa petition filed on

his behalf on or before April 30, 2001, who is physically present in the United States may

pay a fee and apply for adjustment of status.

> Upon receipt of such an application and the sum hereby required, the
> Attorney General may adjust the status of the alien to that of an alien
> lawfully admitted for permanent residence if--
>
> (A) the alien is eligible to receive an immigrant visa and is admissible to

---

[7] Unpublished opinions are not binding precedent. 10th Cir. R. App. P. 32.1(A).
We mention *Castillo-Torres* because of its persuasive reasoning.

the United States for permanent residence; and

(B) an immigrant visa is *immediately available* to the alien *at the time the application is filed*.

8 U.S.C. § 1255(i)(2) (emphasis added).  Petitioning for adjustment of status is a defense in removal proceedings.  If the petitioner qualifies, removal proceedings may be terminated and the alien may be granted lawful status.  The petitioner has the burden to establish his adjustment eligibility.  *See Matter of Hashmi*, 24 I. & N. Dec. 785, 789 (BIA 2009).

According to the BIA, discretion to grant a continuance should generally be exercised favorably for aliens awaiting the adjudication of a pending I-130 petition.  *Id.* at 788 (quoting *Matter of Garcia*, 16 I. & N. Dec. 653 (BIA 1978)).  "At the same time, it is well established that *Garcia* does not require the Immigration Judge to grant a continuance in every case where there is a pending visa petition."  *Id.* at 790.  An IJ should first determine an alien's place in the adjustment process and then consider whether to grant a continuance.

> In determining whether to continue proceedings to afford the respondent an opportunity to apply for adjustment of status premised on a pending visa petition, a variety of factors may be considered, including, but not limited to: (1) the DHS response to the motion; (2) whether the underlying visa petition is prima facie approvable; (3) the respondent's statutory eligibility for adjustment of status; (4) whether the respondent's application for adjustment merits a favorable exercise of discretion; and (5) the reason for the continuance and other procedural factors.  These factors are illustrative, not exhaustive.  While all these factors may be relevant in a given case, the focus of the inquiry is the apparent ultimate likelihood of success on the adjustment application.

*Id.*  Escalera's argument that 8 U.S.C. § 1255(i) permits him to remain in the country

awaiting eligibility for adjustment is without merit. "The fact that an alien is grandfathered [by having a timely filed petition] for [section 1255(i)] purposes does not entitle the alien to adjust status or to remain in the United States while seeking adjustment of status." *Matter of Rajah*, 25 I. & N. Dec. 127, 134 (BIA 2009). "A respondent who has a prima facie approvable [visa petition] and adjustment application may not be able to show good cause for a continuance because visa availability is too remote. *See, e.g., Chacku v. U.S. Attorney Gen.*, 555 F.3d 1281 (11th Cir. 2008) (finding that no good cause was shown for a continuance where the alien's priority date was years in advance of current visa availability)." *Id.* at 136.

Escalera's visa petition has already been adjudicated and is approved. However, a limited number of approved petitions are granted visas each year. Visas are not being issued for petitions with his priority date (the date on which his petition was filed) because visa numbers are not available due to the backlog of petitions. Because his petition is through a sibling, Escalera's preference category is F4. Only 65,000 F4 visas may be issued each year, unless there are unused petitions in higher preference categories, which can spill over into lower priority categories if not used. On September 23, 2008, the date the IJ refused to grant the continuance, the Department of State Visa Bulletin shows processing of petitions with priority dates up to January 15, 1995. The May 2011 Visa Bulletin reports F4 visas from Mexico with a priority date up to February 15, 1996, were being processed at that time. Priority dates have advanced just over one year in this three-year period. Escalera's priority date is April 30, 2001.

Although the agency cases permit, and may even require, an IJ to continue

proceedings in order to await mere processing of a properly filed visa petition with a current priority date, there is no agency or court precedent for requiring an IJ to grant an indefinite continuance so that a petitioner may remain in this country while awaiting eligibility for adjustment of status. Escalera was not eligible for adjustment relief at the time of his removal proceedings. *See Chacku v. U.S. Attorney Gen.*, 555 F.3d 1281, 1286 (11th Cir. 2008), ("[T]he IJ did not abuse his discretion in denying the motion for a continuance, nor did the BIA err in dismissing Chacku's appeal, because Chacku was not statutorily eligible for an adjustment of status on December 7, 2006, the day he filed his adjustment application, as he did not have an immigrant visa immediately available to him at this time."). Moreover, Escalera was unlikely to be eligible within a reasonably proximate time.

The petition for review is DENIED. Escalera's motion to stay removal is also DENIED. Escalera's motion to file his corrected reply brief is GRANTED.