FILED
United States Court of Appeals
Tenth Circuit

November 15, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

EDGAR JOSE SANCHEZ PORRAS;
JANET C. GOITIA ROMAN; ERIC
SANCHEZ GOITIA; KEVIN SANCHEZ
GOITIA,

        Petitioners,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

        Respondent.

Nos. 12-9516 & 13-9505
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**O'BRIEN**, Circuit Judge.

Petitioners are citizens and natives of Venezuela. Proceeding pro se, they seek

review of a decision of the Board of Immigration Appeals (BIA or Board) dismissing

their appeal from the Immigration Judge (IJ)'s decision denying Mr. Sanchez's

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

application for asylum and restriction on removal (No. 12-9516); and of the BIA's denial of their motion to reconsider the denial of their motion to reopen (13-9505).[1] We have consolidated their petitions for purposes of disposition. Exercising our jurisdiction under 8 U.S.C. § 1252, we deny the petition in No. 12-9516 in part, and dismiss in part for lack of appellate jurisdiction; and we deny the petition in No. 13-9505.

## I. BACKGROUND

Petitioners legally entered the United States in 1999, remained after their authorized stay expired, and concede they are subject to removal for having overstayed their visas.

### A. *Petitioners' Applications*

In October 2006, Mr. Sanchez filed an application for asylum, restriction on removal, and for relief under the Convention Against Torture (CAT). The other petitioners—who are his wife and children—are derivative asylum applicants. Petitioners claim refugee status based on their political opinion and their membership in a social group composed of "light-skinned people of middle or upper class status

---

[1] "Restriction on removal was referred to as 'withholding of removal' before amendments to the INA made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). . . . Although [the BIA refers in its decisions here] to withholding of removal, for the sake of accuracy, and because this claim was filed after IIRIRA's effective date, we will use the term 'restriction on removal'. . . ." *Wiransane v. Ashcroft*, 366 F.3d 889, 892 n.1 (10th Cir. 2004).

in Venezuela who oppose the current regime of Hugo Chávez and are Christians."

Admin. R. at 343 (IJ oral decision).[2]

## B. *IJ Proceedings*

At the IJ hearing, Mr. Sanchez testified to his American connections. He first came to the United States as a high school student and lived with an American family. He attended college in Rhode Island and graduated with a B.S. in computer system management. He returned to Venezuela and worked as an executive at various computer firms, then began his own business importing computer parts from the United States.

He and his family returned to the United States in 1999. He now runs a language interpreting company in this country. He is Christian and a member of a Pentecostal congregation.

Mr. Sanchez testified that Hugo Chávez was elected president of Venezuela in 1998 with the support of "lower class citizens and the less economically prosperous people," who constitute about eighty percent of the population. *Id.* at 335. He testified that wealthy people, like his family, are perceived as opponents of the Chávez regime. He said that President Chávez used epithets to describe rich Venezuelans and stated that "it's time to . . . be against the United States and everybody that was involved with [the] United States." *Id.* at 442 (Sanchez

---

[2] Page citations to the record included in this order and judgment are to the administrative record filed in No. 13-9505.

testimony).  Mr. Sanchez also testified that President Chávez is against people who go to church.

In about 2000, President Chávez created the "Bolivarian Circles," composed of groups that supported him and engaged in pro-Chávez activities.  Mr. Sanchez alleges that President Chávez and the Bolivarian Circles discriminate against light-skinned Venezuelans on the basis of skin color.

In his testimony, Mr. Sanchez described an incident of alleged persecution that occurred after President Chávez was elected and before Mr. Sanchez left Venezuela. He was returning to his gated community in Caracas and some people pointed a gun in his face and screamed at him.  This happened about two months before he left Venezuela for the United States.  Around the same time, one of his neighbors was killed.  In his asylum application, Mr. Sanchez also reported that rocks had been thrown at his wife.  Petitioners allege these incidents were perpetrated by Chávez supporters.

After he arrived in the United States in 1999, Mr. Sanchez ran an anti-Chávez website for a couple of years.  In 2002, Mr. Sanchez and his wife signed a petition for a referendum against President Chávez.  He contends that those who signed the petition are listed on the "Tascón List," a list of government opponents.  According to Mr. Sanchez, this list is still used to deny public benefits in Venezuela to those on the list.

Mr. Sanchez testified that he still owns an apartment in Venezuela. His parents and sister still live in Venezuela, and according to his hearing testimony, have not been persecuted by the Chávez government.

Ms. Goitia, petitioner and Mr. Sanchez's spouse, also testified briefly in support of the application. She described the fear experienced by evangelical Christians in Venezuela from alleged persecution by the Chávez regime, and the regime's inability to close down anti-Chávez operations—in particular, an association of Venezuelan exiles known as Organization of Venezuelans in Exile ("ORVEX")—that originate outside of Venezuela.

The IJ found the petitioners' testimony credible, but he denied the asylum application. First, he ruled that the request for asylum was untimely and that petitioners had failed to demonstrate changed circumstances that would excuse the untimeliness. Even if there were changed circumstances, the IJ ruled, Mr. Sanchez failed to file his application within a reasonable time period after the changes occurred. Second, as to their application for restriction on removal, petitioners had not shown either past persecution based on a protected ground or a well-founded fear of future persecution. Finally, the IJ held they had not shown it was more likely than not that they would be tortured upon return to Venezuela. The IJ therefore denied the requested relief and ordered petitioners removed to Venezuela.

## C. *BIA Proceedings*

The BIA affirmed the IJ's decision. The BIA agreed (1) that petitioners were

ineligible for asylum, given the untimely application; and (2) they had failed to demonstrate past persecution or the likelihood of future persecution. The BIA rejected petitioners' assertion that the IJ should have granted them a continuance to acquire an expert witness and to prepare for the hearing.

The BIA issued its decision on January 4, 2012. On March 29, 2012, the Board received petitioners' motion to reopen. In their motion, petitioners purported to present documentary evidence that was not available at the time of the IJ hearing, either because the documents related to events that did not occur until after the hearing, or because they "were simply not obtainable" at the time of the hearing. *Id.* at 46. The documents related primarily to petitioners' activities in the United States on behalf of ORVEX, but also purported to show changed country conditions in Venezuela. As part of their motion to reopen, petitioners also asked the Board to reconsider its finding concerning the untimeliness of Mr. Sanchez's asylum application.

The BIA concluded the motion was untimely to request reconsideration of its prior decision. It specifically discussed many of the exhibits petitioners had submitted, then denied reopening because "much of the evidence provided pre-dates the [IJ] hearing . . . and is not shown to have been unavailable," and because petitioners had failed to show that "the threats against Ms. [Goitia] from unknown sources via twitter, [petitioners'] involvement in ORVEX, and conditions in

- 6 -

Venezuela since the hearing establish their prima facie eligibility for asylum, withholding of removal, or protection under the CAT." *Id.* at 29.

Petitioners filed a motion for reconsideration of the BIA's decision denying their motion to reopen. The BIA denied this motion as well, concluding that petitioners had failed to show any "legal or factual defect in [the] decision denying reopening." *Id.* at 3.[3]

## II. **DISCUSSION**

Petitioners raise seven issues on appeal, which we will discuss in turn.

### A. *Agency's Review of Evidence*

Petitioners argue both the IJ and the BIA erred in failing to consider all the evidence they presented in favor of Mr. Sanchez's application. But the only specific evidence that they allege was not considered were "(10) supporting exhibits [to the motion to reopen] which were not even mentioned by the BIA." Aplt./Pet. Opening

---

[3] Petitioners ask us to review the Board's decision denying their motion to reopen. A denial of a motion to reopen is a final order that may be appealed to this court. *Infanzon v. Ashcroft*, 386 F.3d 1359, 1361-62 (10th Cir. 2004). In their petition for review filed with us on January 22, 2013, petitioners did request review of the denial of their motion to reopen as well as their motion for reconsideration. But this request came too late to obtain judicial review of the motion-to-reopen decision, which had been entered August 31, 2012. Petitioners failed to file a separate petition for review from the motion-to-reopen decision. *See* 8 U.S.C. § 1252(b)(1) (establishing 30-day time period for filing petition for review); *Stone v. INS*, 514 U.S. 386, 394-406 (1995) (holding filing of motion for reconsideration does not toll the 30-day deadline for filing petition for review). We therefore have jurisdiction to consider only the BIA's removal decision of January 4, 2012; and its subsequent order of December 26, 2012, denying reconsideration—which only indirectly implicates the merits of the motion to reopen.

Br., No. 13-9505, at 6. In its order denying their motion for reconsideration, the BIA addressed this argument and stated:

> The [petitioners] point out that the Board did not mention each exhibit attached to the motion. However, the omission of exhibit numbers by the Board in its analysis does not show that the Board did not consider all evidence provided in support of the motion . . . . The Board is not required to discuss every document submitted to analyze whether the requirements for reopening have been met. The [petitioners] have not shown that material evidence was overlooked in analyzing whether reopening was warranted.

Admin. R. at 4.

"[T]he BIA is not required to discuss every piece of evidence when it renders a decision." *Hadjimehdigholi v. INS*, 49 F.3d 642, 648 n.2 (10th Cir. 1995). In its order denying the motion for reconsideration, the Board concluded based on its review of the evidence that the evidence of petitioners' "current involvement in ORVEX was inadequate to establish their prima facie eligibility for relief." Admin. R. at 4. Petitioners have failed to demonstrate that the BIA gave insufficient consideration to the evidence they submitted.

### B. *Denial of Continuance*

Petitioners challenge the denial of their request for a continuance of the IJ hearing scheduled for February 11, 2010. They sought the continuance for several reasons, including their alleged need to obtain testimony from an expert witness concerning country conditions in Venezuela. The IJ concluded that petitioners had failed to show good cause for a continuance. *See* 8 C.F.R. § 1003.29 ("The Immigration Judge may grant a motion for continuance for good cause shown."). He

noted that "it is generally not necessary . . . to present expert testimony to support asylum or withholding applications" and that "[e]xtensive background material is available for Venezuela and it may be introduced without the necessity of calling an expert witness." Admin. R. at 767. The BIA dismissed their appeal on this ground, holding that petitioners had failed to show (1) what evidence they would have presented through the expert witness, and (2) that their lack of preparation for the hearing had occurred despite their diligent good-faith effort to proceed.

We review the decision concerning a continuance for an abuse of discretion. *Luevano v. Holder*, 660 F.3d 1207, 1213 (10th Cir. 2011). Given the stated reasons, petitioners fail to show that the IJ abused his discretion by denying them a continuance, or that the BIA erred in dismissing their appeal.[4]

## C. *Changed Country Conditions*

An applicant for asylum must demonstrate by clear and convincing evidence that he applied for asylum within one year after arriving in the United States. 8 U.S.C. § 1158(a)(2)(B). This deadline may be tolled if the applicant "demonstrates

---

[4] In their opening briefs, petitioners address only whether a continuance should have been granted to permit them to get an expert witness. Aplt./Pet. Opening Br., No. 12-9516, at 5-6; Aplt./Pet. Opening Br., No. 13-9505, at 7-8. In their reply brief, however, they identify other reasons they believe they were entitled to a continuance. Aplt./Pet. Reply Br. at 6-7. The government also mentions these other reasons, and argues they did not justify a continuance. Resp. Br. at 18-20. But we decline to consider these additional bases for a continuance, which were not raised in petitioners' opening briefs. *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (stating this court generally does not consider issues not raised in appellant's opening brief).

to the satisfaction of the Attorney General . . . changed circumstances which materially affect the applicant's eligibility for asylum . . . ." *Id.* § 1158(a)(2)(D). Petitioners attack the IJ's conclusion that Mr. Sanchez did not show changed circumstances sufficient to excuse his untimely filing. We lack jurisdiction to review this determination, however. *See* 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under [§ 1158(a)(2)].").[5]

In addition, we question whether the BIA even relied on the lack of changed circumstances in reaching its decision. The BIA reasoned that even if changed circumstances had been shown, Mr. Sanchez had failed to file his application within a reasonable period after the changes. Admin. R. at 326. Petitioners make no argument concerning this determination.[6] Even if such an argument were made, we would lack jurisdiction to review the BIA's conclusion that Mr. Sanchez failed to file his application within a reasonable time following the alleged changed circumstances. *See, e.g.*, *Orah v. Holder*, 561 F.3d 62, 66 (1st Cir. 2009) (applying

---

[5] We do, however, have jurisdiction to review constitutional claims, 8 U.S.C. § 1252(a)(2)(D), but only insofar as such issues are substantial. *Alvarez-Delmuro v. Ashcroft*, 360 F.3d 1254, 1256-57 (10th Cir. 2004). In their opening briefs, petitioners make occasional references to an alleged denial of due process or equal protection. They fail to raise a substantial constitutional claim, however, and so the exception to the jurisdiction-stripping provision for constitutional claims does not apply here.

[6] The closest they come is a statement that "we decided that we needed to file for asylum and *we did so shortly after these events*." Aplt./Pet. Opening Br. (No. 13-9505) at 9 (emphasis added). This does not address the Board's rationale.

§ 1158(a)(3) jurisdictional bar to review of BIA's determination that petitioner did not file asylum application within a "reasonable period" after alleged change in country conditions).

## D. *Janet Goitia's Asylum Application*

In their motion to reopen, petitioners stated that Janet Goitia was "filing an asylum claim of her own at this time." Admin. R. at 52. No asylum application was attached to the motion to reopen. The Board noted that no application had been submitted with the motion to reopen and no application was part of the administrative record. *See id.* at 8, 34. Petitioners acknowledge that the application was submitted separately from their motion to reopen and is not in the administrative record, and they have attached a copy of it to their opening brief in No. 13-9505.

Because our review is limited to the agency record, *see* 8 U.S.C. § 1252(b)(4)(A), we cannot consider this asylum application. Any argument the BIA should have considered the new asylum application fails because the regulations required them to submit the application with the motion to reopen. *See* 8 C.F.R. § 1003.2(c)(1) ("A motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation."); *Waggoner v. Gonzales*, 488 F.3d 632, 639 (5th Cir. 2007) (stating BIA did not abuse its discretion in failing to reopen proceedings to permit application for asylum based on changed country conditions, where movant failed to submit asylum application with motion). The BIA did not

abuse its discretion in failing to consider an asylum application that was not properly submitted or part of the record.

### E. *Petitioners' "European" Appearance*

Petitioners argue that the BIA ignored that their "immutable characteristics [of] appearing to be European and not Venezuelan" may cause them to be persecuted in Venezuela. Aplt./Pet. Opening Br., No. 13-9505, at 11. They suggest their European features will cause them to be classified as wealthy business owners who do not support the Chávez regime. Accordingly, they "cannot hide in our country and cannot blend in with the normal society. In other words, we cannot pretend to be poor and Chavez supporters because we simply don't look the part." *Id.* at 12.

This argument ignores the BIA's conclusion that petitioners failed to establish a likelihood of future persecution in Venezuela based on opposition to the Chávez regime and economic status. The BIA based this conclusion on the evidence concerning country conditions in Venezuela, not on petitioners' inability to hide their European features. Their assertion that their European appearance makes it impossible to hide their opposition to the Chávez regime and their economic status does not impeach the BIA's finding they failed to show a likelihood of future persecution on those grounds.

### F. *Likelihood of Future Persecution*

Petitioners argue the BIA should have concluded that they were more likely than not to be persecuted if returned to Venezuela. We review the BIA's legal

determinations de novo and its factual findings for substantial evidence. *See*

*Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012). Under the

substantial-evidence standard, "the BIA's findings of fact are conclusive unless the

record demonstrates that any reasonable adjudicator would be compelled to conclude

to the contrary." *Id.* (brackets and internal quotation marks omitted). Applying this

standard, we conclude that petitioners have failed to demonstrate that the BIA's

conclusions concerning the likelihood of future persecution were unsupported by

substantial evidence.

Petitioners also argue that the facts alleged in their motion for reconsideration

support a finding of probability of future harm. They essentially ask us to reweigh

the evidence, which we cannot do. *Neri-Garcia v. Holder*, 696 F.3d 1003, 1009

(10th Cir. 2012). Petitioners have failed to demonstrate that the BIA abused its

discretion in denying their motion for reconsideration.[7]

---

[7] Petitioners also draw our attention to an alleged factual error in the BIA's decision. In its decision, the BIA discussed Exhibit 9, submitted with petitioners' motion to reopen, stating that it contained "threats from undisclosed sources in 2012 directed to the female respondent on a twitter account showing her affiliation with ORVEX." Admin. R. at 29. The BIA concluded that these "threats . . . from unknown sources via twitter," along with the other evidence submitted, did not show petitioners' "prima facie eligibility for asylum, withholding of removal, or protection under the CAT." *Id.*

Petitioners contend that the BIA erred because the Twitter users who threatened Ms. Goitia were not "unknown sources." They point out that in Exhibit 9, they included some general information about the Twitter users beyond just their screen names, including their Twitter profiles. But these self-generated profiles in most cases provided little or no specific information about the users.

(continued)

## G. *BIA's "Summary" Denial of Motion to Reconsider*

Finally, petitioners contend the BIA abused its discretion by issuing a "woefully inadequate" decision concerning their motion to reconsider. They argue the decision failed to show that it "carefully review[ed] and considered the mountain of documents which these respondents have assembled in support of their motion." Aplt./Pet. Opening Br., No. 13-9505, at 13-14. We have already rejected as meritless their argument that the BIA gave insufficient consideration to their exhibits. In addition, the BIA sufficiently articulated the reasons for its decision. The BIA "is not required to write an exegesis on every contention"; rather, it is required to "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Ismaiel v. Mukasey*, 516 F.3d 1198, 1207 (10th Cir. 2008). The BIA's explanation here adequately fulfilled its duty and permits our reasoned review.

---

Three of the users apparently claimed to be Venezuelan government officials: a fire department sergeant, a computer hacker, and a diplomat posted to Syria with alleged ties to Middle Eastern terrorism. But petitioners fail to demonstrate how any of these alleged officials, or any of the other individuals identified in Exhibit 9, posed any threat to them if they are returned to Venezuela. Thus, even if the BIA slightly overstated the case in describing the threat sources as "unknown" or "undisclosed," petitioners failed to provide information about these users sufficient to establish the likelihood of future persecution, leaving the BIA's ultimate conclusion—that petitioners failed to establish prima facie entitlement to relief—unrebutted.

III. **CONCLUSION**

The petition in No. 12-9516 is denied in part, and dismissed in part for lack of appellate jurisdiction.  The petition in No. 13-9505 is denied.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge