FILED
United States Court of Appeals
Tenth Circuit

December 9, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

TIALOM SAMARIA PASARIBU;
MARIA IGNATIA RONAULI,

        Petitioners,

v.

MICHAEL B. MUKASEY,
United States Attorney General,

        Respondent.

No. 08-9521
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **McCONNELL**, and **TYMKOVICH**, Circuit Judges.

---

Petitioners Tialom Samaria Pasaribu and Maria Ignatia Ronauli, mother and

daughter, challenge an order of the Board of Immigration Appeals (BIA)

upholding an Immigration Judge's (IJ's) denial of their application for asylum,

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

restriction on removal, and relief under the Convention Against Torture (CAT).[1]

Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition.

## I. Background

Petitioners are natives and citizens of Indonesia. In 1997, Ms. Pasaribu entered the United States on a student visa. She was accompanied by her daughter. In 2003, Ms. Pasaribu filed an application for asylum and restriction on removal, claiming that if she returned to Indonesia, she would be persecuted on account of her Christian religion. The application was referred to an IJ, and each petitioner was served with a notice to appear. The notices charged petitioners as removable for overstaying their visas. Admin. R. at 309, 332.

Before an IJ, petitioners, through counsel, conceded removability but renewed the asylum and restriction on removal application, requested protection under the CAT, and sought voluntary departure. In support, Ms. Pasaribu testified that she is afraid to return to Indonesia, a predominantly Muslim country, because she fears religious persecution and she fears violence at the hands of her ex-husband.

She stated that she was teased and harassed in public elementary school by Muslim classmates, and in third grade a Muslim classmate poked her in the eye with a pencil. A teacher provided her with a band-aid but no action was taken

---

[1]     Miss Ronauli is a derivative applicant of her mother's claims for relief.

-2-

against the student. Similar events occurred in middle school and high school. She was refused admission to school organizations because she is Christian. After high school she attended academy; there, she had more Christian classmates but was still harassed quite a bit.

In 1998, *after* she had left Indonesia, her mother's automobile repair shop was destroyed in a fire. The arson occurred during Muslim riots, and Ms. Pasaribu contended her mother's shop was targeted because it was known to be owned by Christians. Nobody was arrested, however, "because [they] didn't know who burned [it] for sure." *Id.* at 106. It was not rebuilt because "[t]here was no money." *Id.*

In 2003, Ms. Pasaribu's brother returned to Indonesia from the United States. She stated that he later died "because he was very stressed" from not being able to find employment in Indonesia commensurate with his education since "they mostly . . . hire Muslims as opposed to Christians." *Id.* at 108-09. When she learned of her brother's death she wanted to return to Indonesia but her family discouraged her, telling her it was not safe for Christians in Indonesia. She acquiesced, and testified that she fears returning to Indonesia because of the possibility of riots.

She also stated that she began enduring daily beatings two weeks into her 1993 marriage because she was unable to convert to Catholicism, her

ex-husband's denomination, as quickly as he would have liked her to convert. She never told anyone about the beatings and claimed she was unable to obtain police assistance because domestic violence is common in Indonesia and the police "don't really want to know about it." *Id.* at 115. The couple's daughter was born in 1994 and Ms. Pasaribu left her husband shortly thereafter. When she rebuffed his attempts to reconcile he "threatened that he was going to do something." *Id.* at 118. She speculated that "he was going to kill [her]." *Id.* She said she could not safely relocate to Indonesia because he could readily find her and because there were no safe places for her to live in Indonesia as a Christian. But she also testified that after her divorce, and before she left Indonesia, she avoided her ex-husband for over a year. During this time period she would leave her daughter with her sister and "he didn't know where that was." *Id.* at 133.

The IJ issued an oral decision denying the relief sought. He found Ms. Pasaribu ineligible for asylum because she failed to file her asylum application within one year of arriving in the United States, and she failed to show changed or extraordinary circumstances sufficient to excuse the untimely filing. He further found that the harassment she testified about was behavior not rising to the level of persecution; the burning of her mother's shop "appear[ed] to be the result of civil unrest, and not a form of persecution directed specifically [at her] because of her religion"; and relocation within Indonesia would be a viable option. *Id.* at 50. The IJ acknowledged Ms. Pasaribu was "mistreat[ed]" by her

-4-

ex-husband, but found the threat about which she testified too vague to qualify as persecution. *Id.* The IJ also found that Ms. Pasaribu had not established the Indonesian government was unwilling or unable to protect her from her ex-husband. The IJ concluded Ms. Pasaribu "ha[d] not shown eligibility for withholding of removal [restriction on removal] either under the Immigration and Nationality Act or under the United Nations Convention against Torture." *Id.* at 51. He did, however, grant petitioners' request for voluntary departure. Petitioners appealed.

The BIA dismissed petitioners' appeal. It agreed with the IJ that Ms. Pasaribu's application for asylum was untimely and that she had failed to demonstrate qualification for an exception from the filing deadline. It also considered the requests for restriction on removal and CAT protection but agreed with the IJ that petitioners were not entitled to either form of relief. This timely petition for review followed.

## II. Discussion

Because the BIA issued its decision by a brief order signed by a single board member, 8 C.F.R. § 1003.1(e)(5), we review the BIA's decision as the final order of removal but "may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it." *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007). "Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole.

Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 788-89 (citation, quotations, and brackets omitted). We review the agency's legal conclusions de novo. *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005).

Petitioners do not appeal the denial of their asylum application, apparently recognizing its untimeliness. They do, however, appeal the decisions not to grant restriction on removal or CAT relief. Pet'r Br. 7-16.

## A.    Restriction on Removal

An alien is entitled to restriction on removal if "the alien's life or freedom would be threatened in th[e] country [of removal] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).

> An alien may create a rebuttable presumption of eligibility for restriction on removal by either (1) demonstrating "past persecution" in the proposed country of removal on account of one of the protected grounds,. . . ; or (2) showing that "it is more likely than not that the alien would be subject to persecution on one of the specified grounds" upon returning to the proposed country of removal.

*Sidabutar v. Gonzales*, 503 F.3d 1116, 1123-24 (10th Cir. 2007) (citations and quotations omitted). "Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive, and requires more than just restrictions or threats to life and liberty."

-6-

*Tulengkey*, 425 F.3d at 1280 (quotations omitted). Whether "an alien has demonstrated persecution is a question of fact." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008).

Ms. Pasaribu first takes issue with the conclusion that she did not suffer past persecution, citing her credible testimony about the arson and the harassment she endured. "[A]t the very least," she claims, "[my] experiences in the cumulative . . . equate [to] past persecution." Pet'r Br. at 9. The BIA specifically rejected this argument and substantial record evidence supports its conclusion. Expanding on the IJ's decision, the BIA concluded that the harassment and discrimination Ms. Pasaribu testified to, the incident involving the pencil, and the arson—even if considered in the aggregate—did "not rise to the level of past persecution." Admin. R. at 3. In so holding the BIA also noted Ms. Pasaribu's failure to prove persecution based on any alleged economic impact of the arson, and determined that she had failed to demonstrate the shop was burned on account of her or her family's Christian religion.

Ms. Pasaribu also challenges the conclusion that relocation within Indonesia is a viable option, contending she credibly testified "that she would not be able to find any safe area to live in Indonesia." Pet'r Br. at 10. The BIA concluded otherwise; it stated that petitioners did not meet "their burden of establishing that relocation to any other part of Indonesia to avoid persecution on

account of their Christian religion is unreasonable," Admin. R. at 3-4, and our review of the record reveals substantial evidence to support this conclusion.

Ms. Pasaribu also contends she faces a "clear probability" of persecution in her home country based on her "Christian religion and . . . fear of her husband which is also based on her failure to convert to Catholicism." Pet'r Br. at 11. These cursory assertions fall far short of demonstrating that "any reasonable adjudicator would be compelled to conclude" she is entitled to restriction on removal. *Sarr*, 474 F.3d at 788-89. Further, the mistreatment she suffered prior to her divorce and the vague threat made by her ex-husband shortly after the divorce does not entitle her to restriction on removal. As observed by the BIA she did not, with respect to her "claim based on [her] ex-husband's abuse, . . . clearly articulate[] . . . the 'particular social group' to which she believes she belongs." Admin. R. at 4. But now, for the first time, she claims she belongs to a particular social group of "women in Indonesia who have suffered persecution for failing to convert to the religion or denomination of their husbands." Pet'r Br. at 15. Generally, we are precluded from considering a claim that an alien failed to exhaust. *See Sidabutar*, 503 F.3d at 1118-19. But even assuming this claim was administratively exhausted, Ms. Pasaribu failed to demonstrate that the alleged persecution she fears was "imposed by the government or by groups which the government is unwilling or unable to control." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003) (quotations omitted). Indeed, as noted by the BIA

-8-

and supported by substantial record evidence, Ms. Pasaribu's "generalized claim of inaction, without more, does not persuasively establish the Indonesian government's inability or unwillingness to protect [her] from her [ex-]husband's abuse." Admin. R. at 4. Further, the BIA's conclusion that petitioners are not entitled to restriction on removal based on "past or prospective harm at the hands of [Ms. Pasaribu's] ex-husband," is supported by substantial evidence in the record. *Id.*

## B. Convention Against Torture

"To receive the protections of the CAT, an alien must demonstrate that it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Sidabutar*, 503 F.3d at 1125 (quotations omitted). A CAT claim differs from a restriction on removal claim in that "there is no requirement that the petitioner[] show that torture will occur on account of a statutorily protected ground." *Id.* (quotations omitted).

Ms. Pasaribu asserts in conclusory fashion that she and her daughter qualify for CAT relief for "the same reasons" that they are eligible for restriction on removal. Pet'r Br. at 15. Generally, arguments that are inadequately briefed on appeal are deemed waived. *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007); *Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002). Even if not waived, we, like the BIA, lack an "adequate basis to disturb the Immigration Judge's decision to deny [their] application[] for protection under the CAT." Admin. R.

at 5. "[T]hey have not established a clear probability of torture by or at the instigation of or with the consent and acquiescence of the Indonesian government." *Id.*

## III. Conclusion

The BIA did not err in dismissing Petitioners' claims for restriction on removal and CAT relief. The petition for review is therefore DENIED.

Entered for the Court


Michael W. McConnell
Circuit Judge

-10-