**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 20, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JEAN B. NDA SEKA, a/k/a JEAN BEDEL
NDA SEKA,

Petitioner,

v.

JEFFERSON B. SESSIONS, III, United
States Attorney General,

Respondent.

No. 17-9521
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **O'BRIEN**, and **MORITZ**, Circuit Judges.

Jean Bedel Nda Seka (Seka), a native and citizen of the Ivory Coast, fled to the

United States because his father-in-law wanted Seka to renounce his marriage to his wife

(the father-in-law's daughter) so she could marry a wealthier man. The Department of

---

[*] Oral argument would not materially assist the determination of this appeal. *See*
Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not encouraged, but not prohibited.
Fed. R. App. 32.1. Citation is appropriate as it relates to law of the case, issue preclusion
and claim preclusion. Unpublished decisions may also be cited for their persuasive
value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by
an appropriate parenthetical notation – (unpublished). *Id.*

Homeland Security (DHS) initiated removal proceedings against him. He applied for asylum and withholding of removal.[1] At issue was whether he had established a well-founded fear of future persecution because of his membership in a particular social group (his in-laws, in particular his father-in-law). An Immigration Judge (IJ) denied the application and the Board of Immigration Appeals (BIA) dismissed his appeal from that denial (asylum is not a remedy for individuals' personal—particularly intra-family—disputes). Seka seeks review of the denial of his application. He also argues the IJ should have continued his merits hearing to allow him to obtain counsel. We deny the petition for review.

## I. Background

### A. *Seka's flight to the United States*

Seka was born on April 3, 1978, in the Ivory Coast. He became a hairdresser and owned his own salon. In 2011, he met Yapi Apo Florence (Florence). A year later, they decided to get married. In their culture, marriage is a two-step process. The first (called Koko) requires the groom to prove to the bride's family that he wants to marry her. Seka

---

[1] Seka also sought withholding of removal under the Convention Against Torture (CAT), which "prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Karki v. Holder*, 715 F.3d 792, 806 (10th Cir. 2013) (quotation marks omitted). The IJ denied CAT relief and the BIA declined to consider the issue because Seka had not meaningfully raised the issue in his appeal to the BIA. Because he has also abandoned the issue in his petition for review, we do not consider it. *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived." (quotation marks omitted)).

completed this step in January 2014. The second requires the groom to buy sheep and liquor for the bride's family. Seka completed this step in January 2015.

About seven or eight months later, a man, Papa Ali, unknown to Seka at that time, approached Seka in his salon. Ali wanted to marry Florence. He told Seka he must "renounce and forsake [his] wife" or "it will cost [him his] life." (R. at 186.) When Seka told his father-in-law what had happened, his father-in-law informed Seka he wanted his daughter to marry Ali because Seka was not wealthy enough. He also said that once the marriage ended he would return the money Seka spent in the marriage process.

Florence confirmed to Seka that Ali had proposed to her. She said they needed to flee the country because her father had decided she should be married to Ali and, in their culture, her father had the last word on that issue. They sold their belongings and left the country separately—Florence to Brazil because she had obtained a visa and Seka to Ecuador because he did not have sufficient funds to also secure a visa to Brazil. They eventually reunited and arrived at the San Ysidro, California port of entry on or about February 20, 2016. Because they did not have valid entry documents, they were detained.[2]

While in detention, Seka contacted two individuals in the Ivory Coast, Francis and Guy Papa, who were aware of his dispute with his father-in-law. They informed him

---

[2] Seka and Florence were detained in separate facilities. At the time of the final hearing on his asylum application (November 22, 2016), Seka was not aware of Florence's whereabouts but was trying to locate her. He apparently did so because he provided her affidavit to the BIA in his appeal from the IJ's decision.

- 3 -

Florence's family had been harassing his father and his parents were killed after he fled the country. Seka claims to know no details.

*B. Immigration Proceedings*

Seka told the interviewing immigration officer he feared death if he was returned to the Ivory Coast because of the marriage dispute. The officer concluded "there [was] a significant possibility" that Seka could establish fear of persecution on account of his "[m]embership in a particular social group." (R. at 298.) The officer defined the social group as Florence's immediate family.

On March 22, 2016, DHS served Seka with a notice to appear before an IJ, which he did on April 13, 2016. The IJ informed him of his "right to be represented by an attorney or qualified representative of [his] choosing and at no expense to the United States Government." (R. at 123.) She also provided him a list of organizations that might be willing to provide him legal services at little or no cost if he could not afford to retain an attorney. Seka waived his right to representation. He conceded removability but applied for asylum and withholding of removal.

On April 27, 2016, he again appeared before the IJ. He had yet to complete his asylum application because the detention center's library had been closed for over a week. The judge provided him an additional two weeks, until May 11, 2016, to complete his application. On May 11, the judge accepted the application and set a final hearing for August 8, 2016. On August 8, Seka informed the judge there were errors in his application. She again continued the hearing—until August 29, 2016—to allow Seka

time to correct the errors.  On August 29 she accepted the amended application and set a final hearing for September 30.

Due to her schedule, the IJ continued the September 30 hearing to November 22. At the September 30 hearing, Seka told the judge he was attempting to find a lawyer. The judge told Seka he could continue to try to retain counsel but, if he did not, the hearing on November 22 would nevertheless go forward.

At the November 22 hearing, Seka asked for a continuance to obtain an attorney. The judge denied his request:

> The Court will not grant any more continuances.  [Seka] was first before the Court on April 13th of this year.  He was advised of his rights in these proceedings and he indicated that he understood those rights.  He waived his right to counsel on the 13th in order to plead to the charges against him.  The Court does recognize that that's not a permanent waiver, just a waiver for purposes of pleading.  [Seka] was given an asylum application on that day and instructed to complete it.  He was told to file it on April 27th, but when he returned to court on April 27th, he did not have it ready to file and so another continuance was given. And on May 11th, [Seka] did file the asylum application.  Three individual hearings have been set, August 8th, August 29th and September 30th . . . .

> This is the fourth and last attempt to go forward with your merits hearing.  I am not willing to give you any more continuances . . . .

(R. at 179-80.)

At the hearing, Seka testified about his marriage, his confrontation with Ali, and his decision to flee the Ivory Coast with his wife.  When asked whether he sought protection from the police in the Ivory Coast, he said no, claiming the police would accede to his father-in-law's wishes concerning his daughter, Florence.  He also said the police would not be able to protect him if he returned to the Ivory Coast, especially if he

- 5 -

returned without Florence, because "the police would not be able to protect me every single day" and "my life will be in danger." (R. at 192.) In particular, he claimed his father-in-law would likely poison him or use voodoo against him.

In a written order, the IJ denied his application for asylum and withholding of removal. She found Seka to be credible. However, she concluded he had not established a well-founded fear of future persecution on account of his membership in a particular social group. Like the asylum officer, she defined the social group as Florence's immediate family. Even assuming Florence's immediate family was a cognizable social group, Seka had failed to show he would be persecuted on account of that membership if he were to return to the Ivory Coast:

> [E]ven if the Court were able to define a cognizable group in which [Seka] is a member, [he] is unable to establish that his membership in any group of people would be one central reason for the persecution he fears. As nobody else with a familial relationship to [his] wife is being targeted (in fact it is members of his wife's family who are the ones [he] fears), it is apparent that [Seka] does not fear harm on account of his familial relationship to his wife, but rather that his fears are based on a personal dispute between him and his wife's father.

> [Seka] wrote in his [application for asylum and withholding of removal] that if he were to return to his home country he would be sought out because he took his wife away from her father. Additionally, [Seka] told the Asylum Officer that he left the Ivory Coast because his wife's dad wanted her to marry a friend of his. [He] also stated in his [application] that his father-in-law wants [Florence] to marry another man who is very rich and powerful because the family needs money. Such statements by [Seka] are further indication to the Court that [his] fear of future harm is not related to a protected ground, but instead a personal or financial dispute.

(R. at 89 (citations and quotation marks omitted).) Because Seka had not met his burden of establishing eligibility for asylum, the IJ concluded he also failed to meet the higher

- 6 -

standard for withholding of removal.

Seka appealed to the BIA which agreed with the IJ on all counts. Even if immediate family members constitute a valid particular social group, Seka had not shown a well-founded fear of future persecution because of his membership in that group (as opposed to a personal dispute with his father-in-law):

> [T]he immediate family members of [his] wife have not been targeted as a group for harm; rather, [Seka] alone fears harm from his wife's father because of a personal dispute relating to his refusal to renounce his marriage to his wife. [Seka] is the only person who has had problems and we agree with the [IJ] that a particular social group must contain more than one person.

> Additionally, no clear error exists in the [IJ]'s finding that the harm [Seka] fears would be motivated by a personal dispute. A persecutor's actual motive is a matter of fact to be determined by the [IJ] and reviewed by us for clear error. [Seka's] statements in his testimony, on his asylum application, and during his credible fear interview confirm this motive and demonstrate the personal nature of the dispute between [Seka] and his father-in-law. Thus, [Seka] did not demonstrate that his membership in the immediate family of his wife is one central reason for the harm he fears. Instead, the evidence establishes that [Seka]'s fear of future harm is based on a personal dispute between [him] and his father-in-law, which is not a basis for asylum.

(R. at 4 (citations omitted).)

The BIA also concluded the IJ's denial of Seka's last-minute request for a continuance was proper given that Seka had been instructed regarding his right to counsel at the April 13 hearing and reminded of his right to seek counsel at the September 30 hearing. Moreover, the merits hearing had been continued multiple times over a seven month period to allow him the opportunity to secure counsel.

## II. Standard of Review

"[T]he scope of our review is governed by the form of the BIA decision." *Htun v.*

- 7 -

*Lynch*, 818 F.3d 1111, 1118 (10th Cir. 2016) (quotation marks omitted). "Where, as here, a single BIA member issues a brief order affirming the IJ's decision, we review the order as the final agency determination and limit our review to the grounds relied upon by the BIA." *Id.* "But, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id*. (quotation marks omitted).

We review legal questions de novo and factual findings for substantial evidence. *Rodas-Orellana v. Holder*, 780 F.3d 982, 990 (10th Cir. 2015). Under the substantial evidence standard, "the BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id*. (quotation marks omitted).

"We review the decision to deny a continuance for an abuse of discretion." *Luevano v. Holder*, 660 F.3d 1207, 1213 (10th Cir. 2011) (quotation marks omitted). Only if the denial was "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis, will we grant the petition for review."[3] *Id*. (quotation marks omitted).

## III. Discussion

---

[3] Despite the discretionary nature of asylum and the IJ's decision to deny a continuance, we nevertheless have jurisdiction to review both decisions. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) (giving courts jurisdiction to review asylum decisions under 8 U.S.C. § 1158(a)); *see also Luevano*, 660 F.3d at 1213 ("Because an IJ's discretion to deny a request for a continuance arises from a regulation, 8 C.F.R. § 1003.29, we possess jurisdiction to consider the denial of a motion for continuance . . . .").

*A. Asylum*

"The Attorney General has discretion to grant asylum to a person who qualifies as a 'refugee.'" *Xui v. Lynch*, 846 F.3d 1099, 1106 (10th Cir. 2017) (quoting 8 U.S.C. § 1158(b)). A "refugee" is a person "who is unable or unwilling to return to [his country of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). We refer to these five categories as "protected grounds." *Rodas-Orellana*, 780 F.3d at 986.

A petitioner can establish refugee status by establishing, among other things, "a well-founded fear of future persecution on account of a protected ground."[4]  *Id.*

---

[4] A petitioner can also establish refugee status "through a showing of past persecution on account of a protected ground, which gives rise to a rebuttable presumption of having a well-founded fear of persecution on account of a protected ground." *Rodas-Orellana*, 780 F.3d at 986 (quotation marks omitted). The IJ decided Seka had not shown past persecution because threats from his father-in-law were insufficient. *See Vatulev v. Ashcroft,* 354 F.3d 1207, 1210 (10th Cir. 2003) ("Threats alone generally do not constitute actual persecution . . . ."); *see also Ritonga v. Holder*, 633 F.3d 971, 975 (10th Cir. 2011) (persecution requires more than "threats to life and liberty") (quotations marks omitted). Because Seka did not meaningfully challenge this aspect of the IJ's decision, the BIA deemed the issue waived. However, even if the issue was properly before it, the BIA concluded the IJ did not err. Seka does not raise this issue in his petition for review and we do not consider it. *See Tran*, 355 F.3d at 1266.

Whether future or past, "[t]he persecution must be imposed by the government or by groups which the government is unwilling or unable to control." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir.2003) (quotation marks omitted). The persecution in this case was imposed by Seka's father-in-law, not the government of the Ivory Coast. And his claim the government (the police) will not or cannot control his father-in-law because fathers have the last word concerning whom their daughters will marry is mere speculation; Seka admitted he never sought police intervention. Moreover, a "generalized claim of inaction, without more, does not persuasively establish the [Ivory

(Continued . . .)

- 9 -

(quotation marks omitted)." "For persecution to be on account of a statutorily protected ground, the victim's protected characteristic must be central to the persecutor's decision to act against the victim." *Rivera–Barrientos v. Holder*, 666 F.3d 641, 646 (10th Cir. 2012) (quotation marks omitted). Seka bears the burden to establish he is a refugee. 8 U.S.C. § 1158(b)(1)(B)(i).

Seka claims to have established the harm he fears is on account of a protected ground, i.e., his membership in a particular social group. According to him, the BIA improperly defined the "particular social group" as Florence's immediate family rather than her nuclear family.[5] He claims his membership in her nuclear family is the central reason for his fear of future persecution—his life is in danger due to his marriage to Florence. Moreover, all members of Florence's nuclear family (2) have been targeted— he with his life and Florence with a forced marriage, which, he says, is a form of persecution.

The BIA did not address the nuclear family issue even though Seka raised it in his

---

Coast] government's inability or unwillingness to protect [Seka] from [his father-in-law]." *Pasaribu v. Mukasey*, 301 F. App'x 795, 799 (10th Cir. 2008) (unpublished) (quotation marks omitted). Nevertheless, because the BIA did not deny asylum on this ground, we will not affirm on this basis. *Salazar v. Lynch*, 614 F. App'x 362, 364 (10th Cir. 2015) (unpublished) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (stating federal courts will not affirm agency decisions based on reasoning not considered by the agency)).

[5] "Immediate family" is "a person's parents, brothers and sisters, husband or wife, and children." *See* https://www.merriam-webster.com/dictionary/immediate%20family. "Nuclear family" is "a family group that consists only of parents and children." See https://www.merriam-webster.com/dictionary/nuclear%20family. In this case, Florence's nuclear family consists of Seka and Florence.

- 10 -

appeal to the BIA.  Assuming, arguendo, Florence's nuclear family is the "particular social group" and a nuclear family is a valid "particular social group" for asylum purposes,[6] substantial evidence supports the BIA's finding that Seka's fears of future persecution stem from a personal dispute between him and his father-in-law rather than his membership in Florence's nuclear family.

Defining the "particular social group" as Florence's nuclear family (rather than her immediate family) is certainly convenient for Seka.  Doing so eliminates the BIA's concern that other members of Florence's immediate family had not been targeted.  And, at first glance, it appears to satisfy his burden—but for his marriage to Florence, he would not be subject to persecution by his father-in-law.  However, as we will explain, the purpose of asylum is not to protect individuals from personal disputes between family members.

The Fourth Circuit's recent discussion in *Velasquez v. Sessions* is instructive.  866 F.3d 188, 194 (4th Cir. 2017).  Velasquez fled from Honduras to the United States with her child after her mother-in-law threatened to kill her if she did not relinquish custody of the child to her (the mother-in-law).  *Id*. at 191-92.  Velasquez sought asylum, claiming

---

[6] We have not definitively decided the issue.  However, a panel of this court did suggest in an unpublished decision that groups sharing kinship ties constitute a "particular social group."  *Rahman v. INS*, 133 F.3d 932, No. 97-9527, 1998 WL 3277, at *4 (10th Cir. Jan. 7, 1998) (unpublished).  And other circuits have recognized that the nuclear family satisfies the requirements for a "particular social group."  *See, e.g., Gebremichael v. INS*, 10 F.3d 28, 36 (1st Cir. 1993) ("There can, in fact, be no plainer example of a social group based on common, identifiable and immutable characteristics than that of the nuclear family."); *Bernal-Rendon v. Gonzales*, 419 F.3d 877, 881 (8th Cir. 2005) ("[A] nuclear family can constitute a social group.").

- 11 -

she feared persecution from her mother-in-law on account of her membership in her nuclear family. *Id.* at 192. The BIA concluded the alleged persecution was not on account of that membership; rather, she was being targeted due to an intra-family custody dispute. *Id.* at 193. The Fourth Circuit agreed with the BIA.

Substantial evidence supported the BIA's finding that the mother-in-law's threats "were motivated not by Velasquez' family status but by a personal desire to obtain custody [of her grandchild]." *Id.* at 195. In so concluding, the court distinguished its prior cases where it had found the alleged persecution was on account of a petitioner's membership in her nuclear family. *Id.* at 195-96. In those cases, a non-familial third party was the persecutor and the persecutor was motivated by non-personal reasons, either to have the petitioner persuade her son to join a gang or to prevent the petitioner from going to the authorities after her husband was killed for uncovering his boss's illicit business. *Id.* In contrast, the Fourth Circuit said, "this case concerns solely a custody dispute between two relatives of the same child and necessarily invokes the type of personal dispute falling outside the scope of asylum protection." *Id.* at 196.

So too here. Seka testified he fears his father-in-law will kill him if he returns to the Ivory Coast. With him out of the picture, Florence is free to marry Ali, who the father-in-law believes is better for her because he has more money. Seka also testified to concern that the police cannot, or will not, protect him because they will abide by the father-in-law's wishes. Like in *Velasquez*, this case involves neither a third-party persecutor nor a persecutor motived by non-personal reasons. Rather, it concerns a

familial persecutor whose motives are personal and financial in nature—a desire for his daughter to marry a wealthier man. Such disputes are insufficient to establish eligibility for asylum. *See Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003) ("[P]ersonal hostility [does] not implicate asylum eligibility."); *see also Velasquez*, 866 F.3d at 194 ("Aliens with a well-founded fear of persecution supported by concrete facts are not eligible for asylum if those facts indicate only that the alien fears retribution over purely personal matters.") (quotation marks omitted)); *Zoarab v. Mukasey*, 524 F.3d 777, 781 (6th Cir. 2008) ("Asylum is not available to an alien who fears retribution solely over personal matters."); *Jun Ying Wang v. Gonzales,* 445 F.3d 993, 998–99 (7th Cir. 2006) ("[A] personal dispute cannot give rise to a claim for asylum.").

The BIA decision is supported by substantial evidence. Because Seka has not met the standard for asylum, he has also not met the more stringent standard for withholding of removal. *See Estrada-Escobar v. Ashcroft*, 376 F.3d 1042, 1048 (10th Cir. 2004).

### *B. Denial of Continuance*

According to Seka, he had the statutory and regulatory privilege to be represented by counsel of his choice at no expense to the government and denying him a continuance to obtain counsel was an abuse of discretion. Convenient, but not convincing. The judge cited the number of continuances already granted, but Seka says those continuances were outside of his control. He also says that as a detained alien with no contacts in the United States and unable to speak English, a short continuance to allow him to obtain counsel would have been reasonable and appropriate. His lack of counsel, he says, resulted in the

- 13 -

IJ ascribing to him a social group (Florence's immediate family) rather than the one he prefers (Florence's nuclear family).

The IJ's decision to deny a continuance was eminently reasonable. The judge told Seka at the April 13 hearing that he had a right to retain counsel. She also provided him a list of pro bono organizations that might represent him for little or no cost. The merits hearing was continued several times after that, during which time Seka could have retained counsel or sought pro bono legal services. While he claims the continuances were out of his control that is beside the point. Regardless of the reasons for the continuances they afforded him over seven months to secure counsel, which he failed to do.

Seka also claims the IJ did not adequately inform him of his right to counsel. He concedes the judge initially informed of his right to counsel at the April 13 hearing, *see* 8 C.F.R. § 1240.10(a) (requiring IJ to advise alien in a removal proceeding of his right to retain counsel and the availability of pro bono legal services). But, he tells us, 8 C.F.R. § 1240.11(c)(1)(iii) required her to re-advise him at the May 11 hearing when she accepted his asylum application. Not so.

If an alien expresses fear of persecution upon return to his home country, § 1240.11(c)(1)(iii) requires the IJ to advise him that he may apply for asylum or withholding of removal and of his privilege to retain counsel at his own expense. The judge must also provide the alien a list of pro bono counsel. The judge in this case did just that at the April 13 hearing. She noted that an asylum officer had found Seka had a

credible fear of returning to the Ivory Coast. As a result, she advised him of his right to seek asylum and withholding of removal. At that same hearing, she informed him of his right to an attorney and provided him a list of pro bono attorneys. This fulfilled her obligations under the regulation. There was no need to re-advise at the May 11 hearing.

We **DENY** the petition for review.

Seka's request to proceed on appeal *in forma pauperis* or *ifp* is **DENIED AS MOOT**. Since we have reached the merits of his petition for review, prepayment of fees is no longer an issue. The relevant statute, 28 U.S.C. § 1915(a), does not permit litigants to avoid payment of fees; only prepayment of fees is excused. Accordingly, Seka is required to pay all fees ($500.00). Payment must be made to the Clerk of this Court. *See* Fed. R. App. P. 15(e).

 

 

**Entered by the Court:**

 

 

**Terrence L. O'Brien**
United States Circuit Judge